UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BUTTE COUNTY,<br><br>               Plaintiff,<br><br>v.<br><br>JENNIFER MULHERN GRANHOLM,<br>in her official capacity as SECRETARY<br>OF ENERGY; and the UNITED<br>STATES DEPARTMENT OF<br>ENERGY,<br><br>               Defendants. | Case No. 1:23-cv-00093-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Jennifer Granholm and the United States Department of Energy's (collectively "DOE") Motion to Dismiss. Dkt. 7. Plaintiff Butte County opposes the Motion. Dkt. 9. The Court held oral argument on October 30, 2023, and took the matter under advisement. Dkt. 15. Upon review, and for the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.

## II. BACKGROUND

### A. The Agencies

In 1946, Congress enacted the Atomic Energy Act ("AEA") which established the Atomic Energy Commission ("AEC"). The AEC was given broad authority over nuclear

MEMORANDUM DECISION AND ORDER - 1

energy projects and regulation. In 1949, the AEC established the National Reactor Testing Station in Butte County, Idaho. That station is now part of the Idaho National Laboratory ("INL").

In 1974, Congress abolished the AEC and established two new agencies. The first was the Nuclear Regulatory Commission ("NRC") which inherited AEC's licensing functions and related regulatory authority. The second was the Energy Research and Development Administration ("ERDA") which absorbed all remaining functions of the AEC, including—relevant to this case—the naval reactors program.

In 1977, Congress created the Department of Energy and transferred all authorities and functions of the ERDA to the DOE—including ERDA's authorities and responsibilities relating to the management of nuclear waste and the naval nuclear reactor program.

### B. TMI-2 Reactor Core Materials

In March of 1979, there was an accident at the Three Mile Island nuclear facility in Pennsylvania. The Unit 2 reactor ("TMI-2") at that nuclear generating station suffered a partial meltdown of fuel rods comprising its core. In 1980, the DOE entered into an agreement with the owners of the Three Mile Island plant (and others) that would allow for investigation into the causes of the accident as well as other nuclear-related research.[1] In 1982, the DOE entered into an agreement with the Three Mile Island plant under which it would acquire ownership of TMI-2 reactor core material. It also entered into an agreement

---

[1] For all the problems the accident caused, it also presented a unique opportunity for research into the nuclear field that had, up until that point, been unavailable.

with the NRC under which it would assume responsibility for the removal, storage, and disposal of nuclear waste from TMI-2. And in 1984, the DOE entered into another agreement with Three Mile Island, pursuant to the AEA, that it would accept TMI-2 core material. Those materials were shipped to the INL between 1986 and 1990 for research and disposal.

### C.  Naval SNF

Since as early as 1957, spent nuclear fuel ("SNF") from the United States Navy has been stored and managed at the INL.

In 1982, President Reagan issued Executive Order 12,344 which formally memorialized the Naval Nuclear Propulsion Program (NNPP) as a joint program between the DOE and the Department of the Navy.

In 1989, the AEA was amended to authorize the DOE to "provide for safe storage, processing, transportation, and disposal of hazardous waste (including radioactive waste) resulting from . . . naval nuclear propulsion programs . . . ." 42 U.S.C. § 2121(a)(3). The AEA further provided that the President of the United States may direct the DOE to deliver nuclear materials or atomic weapons to the Department of Defense as necessary. *Id.* § 2121(b).

### D.  NWPA

In 1983, the Nuclear Waste Policy Act (NWPA) was signed into law. The NWPA established federal responsibility for the disposal of *commercial* spent nuclear fuel and other high-level radioactive waste.

Part B of the NWPA[2] provided authority for a limited "interim storage program" under which the DOE could store SNF from *civilian* nuclear power reactors in situations where the NRC determined those facilities could not provide adequate storage capacity themselves and, therefore, were at risk of shutting down. 42 U.S.C. §§ 10151–10157. The DOE's authority to enter such contracts was limited by various provisions, and it was only authorized to exercise its limited authority between 1983 and 1990. Relevant today, the NWPA provided that operators would be required to pay fees to the DOE and the DOE could, in turn, make "impact assistance payments" to states or counties to mitigate the impacts from such interim storage facilities. *Id*. § 10156(e).

In December 1990, the DOE submitted its annual report to Congress and confirmed that it had *not* entered into any such contracts with civilian power plant operators during the applicable timeframe. *See, e.g.*, Office of Civilian Radioactive Waste Management, Annual Report to Congress (December 1990), https://www.osti.gov/servlets/purl/138018 ("The legislation authorized DOE to enter into contracts for the deployment of [federal interim storage] only through January 1,1990, and no applications were received prior to the expiration of the provision.").

### E.  Litigation History

Butte County previously sued the United States under the theory that the storage of spent nuclear fuel at INL violated § 10156(e) of the NWPA. In 2019 specifically, Butte

---

[2] In the text of the NWPA, the interim storage provisions appear at "Subtitle B" of "Title I," §§ 131–37. When codified, the interim storage provisions appear at "Part B" of "Subchapter I," 42 U.S.C. §§ 10151–57. The parties refer to the interim storage provisions as "Part B." The Court will follow suit.

County sought money damages in the Court of Federal Claims for lost or missing impact assistance payments. That court concluded that Butte County's theories based on both the TMI-2 reactor core material and naval SNF fell outside the applicable six-year statute of limitations because Butte County's claims would have accrued at the latest in 1990 when the DOE's authority to enter into interim storage contracts under the NWPA lapsed (because the contracts were a condition precedent to receiving impact assistance payments). *Butte Cnty., Idaho v. United States*, 151 Fed. Cl. 808, 815 (2021), *aff'd*, 2022 WL 636101 (Fed. Cir. Mar. 4, 2022) ("Plaintiff's claim, however, is time barred because Butte County should have realized that the DOE's contract [regarding the TMI-2 reactor core material] did not conform with Part B of the NWPA when the contract was executed in 1984 or, at the very latest, when DOE's authority to enter into a section 10156(a) contract expired in 1990."); *see also id*. at 817–18 (same reasoning for naval SNF claims).

The Court of Federal Claims also concluded that Butte County's causes of action failed "as a matter of law" because it "cannot show that it is entitled to impact assistance payments" since the DOE never actually entered into any interim storage contracts with civilian power generators and any impact assistance payments could only have been paid out of the fees collected from those civilian agreements. *Id*. at 818–19.

On appeal, the Federal Circuit affirmed the dismissal of all claims on the alternative ground that § 10156(e) was not money-mandating.[3] *Butte County v. United States*, 2022

---

[3] As the phrase suggests, a "money-mandating" statute is a statute that confers a substantive right to recover money damages from the United States. The Tucker Act of 1887—which Butte Country relied on in its prior suit—confers jurisdiction on the Court of Federal Claims to adjudicate all monetary claims against the United States Government based on federal statutes.

WL 636101, at *6 (Fed. Cir. Mar. 4, 2022) (concluding that "the discretion afforded DOE as to payments to local government is too broad to characterize the NWPA provisions as money-mandating"). The Court will delve into this case more fully below.

Butte County does not bring the current case against the United States as it previously did, but against subordinate agencies: the DOE and its Secretary. Before the Court of Federal Claims, Butte County's sole claim related to impact assistance payments under 42 U.S.C. § 10156(e). In this case, its first four claims are based upon the same premise.[4]

In short, Butte County is, once again, concerned with the nuclear materials stored at the INL. Dkt. 1. It avers these materials were (and are) stored at the INL pursuant to the interim storage program described in Part B of the NWPA. Because the materials are stored pursuant to those provisions, it alleges the DOE should have determined the social and economic impacts as required.[5]

The DOE swiftly moved to dismiss all of Butte County's claims in this case. Dkt. 7. It alleges most of the claims are barred because of the prior lawsuit but also that, even if the prior suit never occurred, the claims must still be dismissed because it never provided any interim storage under the NWPA; it did so pursuant to the AEA. Finally, it asserts Butte County lacks standing and that its claims are time-barred. For these myriad reasons,

---

[4] Butte County has two other claims in this case. Claim V alleges the NWPA required the DOE to promulgate regulations regarding impact assistance payments under the interim storage provision and Claim VI alleges that the DOE should only be allowed to use funds obtained as described in Part B to store nuclear materials.

[5] That said, as will be explained below, Butte County does not want any financial relief in this case; the request is injunctive in nature.

the DOE asks the Court to dismiss Butte County's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction exists. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). The court must resolve the jurisdictional issue before it proceeds to the merits of the plaintiff's claims. *See, e.g., Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

#### B. Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is

plausible on its face." *Id*. at 570.

In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them." *Johnson*, 534 F.3d at 1122.

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

The DOE first argues this case should be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction because the prior lawsuit bars Claims One through Four and Butte County lacks standing to bring Claims Five and Six. Second, it alleges the applicable statute of limitations period has long since run, further barring all Claims. Finally, it alleges that—assuming jurisdiction and that the statute of limitations has not run—Butte County has still failed to state a claim for relief because it did not (and does not), in fact, store any spent nuclear fuel at the INL pursuant to the NWPA. The Court will address each argument in turn.

### A. Issue Preclusion and Standing

The DOE argues the prior litigation before the Court of Federal Claims and the Federal Circuit bars Claims One through Four of Butte County's Complaint. Claims One through Four are all related to impact assistance payments under 42 U.S.C. § 10156(e). Dkt. 1, at 41–46.

MEMORANDUM DECISION AND ORDER - 8

As the Supreme Court has long held, the principle of issue preclusion is important because it prevents "parties from contesting matters that they have had a full and fair opportunity to litigate [and] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

Butte County has two responses to the DOE's arguments on this wise. First, it claims the dismissal at the Federal Circuit was not an adjudication on the merits; therefore, that decision does not preclude the instant case. Second, and relatedly, it asserts the prior litigation rested upon a different legal theory. The Court will analyze both defenses briefly.

To begin, Butte County is correct that issue preclusion applies only when there has been an adjudication *on the merits*. The prior lawsuit at issue here was dismissed on jurisdictional grounds. In *Costello v. United States,* the Supreme Court held that a dismissal for lack of subject matter jurisdiction is "not ordinarily a bar to a subsequent action on the same claim" because "there must be at least one decision on a right between the parties" before preclusionary principles apply. 365 U.S. 265, 285 (1961) (citation omitted). Nevertheless, while "[a] dismissal for lack of subject matter jurisdiction is not a final judgment on the merits, Fed. R. Civ. P. 41(b), . . . such dismissal does preclude re-litigation of the jurisdictional issue there presented, in a subsequent action." *In re Brooks-Hamilton*, 271 F. App'x 654, 657 (9th Cir. 2008).

Butte County asks the Court to stop its inquiry with the fact that the Federal Circuit's dismissal was based on jurisdiction. It contends that court did not make any merits-based

determinations and, as a result, it is not estopped from litigating this case. But the Court must look past the outcome itself and ascertain *why* the Federal Circuit found a lack of jurisdiction. In doing so here, the Court finds, contrary to Butte County's urging, that the Federal Circuit did make a merits-based determination *within* its jurisdictional finding. And that issue is critical to the case today.

The Federal Circuit noted at the outset that it was reviewing the Court of Federal Claims' dismissal of Butte County's cases "for lack of subject matter jurisdiction." *Butte Cnty.*, 2022 WL 636101 at *4. It noted timeliness (i.e. the statute of limitations) was the primary issue, but that timeliness was "not the only jurisdictional requirement." *Id*. The Federal Circuit then explained:

> An additional jurisdictional requirement relates to the character of the source of substantive law whose violation is asserted as the basis for money damages. Specifically, under longstanding precedents, the presence of jurisdiction in this case would require that the statutory provisions Butte County has identified as the basis of its Tucker Act suit—the relevant provisions of the NWPA—be fairly interpreted as money-mandating as to the particular class of plaintiffs of which Butte County is a part, namely, local governments. Even if we deemed Butte County's complaint timely, we would have to find the NWPA provisions to be money-mandating under that approach in order to disturb the jurisdictional dismissal on appeal.

*Id*. (internal citations omitted). The Federal Circuit stated that, in that case, it was "choos[ing] to address whether the NWPA provisions meet the jurisdictional money-mandating requirement" and then ultimately "conclude[d] that they do not, so there is no Tucker Act jurisdiction over this action." *Id*. at *5. In short, the Federal Circuit did not find there was jurisdiction, but that was *precisely because* the NWPA provisions did not fit squarely into Butte County's allegations. Part B of the NWPA does not mandate that the government make

MEMORANDUM DECISION AND ORDER - 10

payments to localities. That was the "jurisdictional issue" decided by the Federal Circuit. Butte County cannot avoid that holding.

Butte County's second argument against issue preclusion is related to its first. It contends that, jurisdiction aside, the prior litigation was based upon the Tucker Act and this case is based upon the APA. This is true, but as noted above, the underlying findings are still what they are—that the NWPA does not require payments to Butte County.

The Court finds one of Butte County's sub-arguments on this wise *marginally* persuasive. It alleges the prior case was seeking money damages and sought to determine whether the Government had a statutory duty to pay impact assistance payments, whereas this case is directed more broadly at the Government's failure to perform its duties as it relates to the storage and disposal of nuclear waste (but, ironically, that includes its failure to provide impact payments).

Candidly, Butte County's position seems like wordsmithing to the Court. The underlying issue that led to the jurisdictional dismissal in the Federal Circuit is the same underlying issue at play in this case—Part B of the NWPA and if/when financial payments must be made. Thus, the Court is inclined to agree with the DOE that the prior litigation bars Claims One through Four.[6]

The Court turns next to standing. In Count Five, Butte County alleges that the NWPA

---

[6] Butte County also claims the decision is "unpublished" and "nonbinding." Dkt. 9, at 33, 35. But it presents no authority suggesting such a status means preclusion does not apply. In fact, it appears this makes no difference. Courts in the Ninth Circuit give preclusive effect to Federal Circuit decisions and even state court decisions as appropriate. *See Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508–09 (9th Cir. 1993) (applying issue preclusion based on an unpublished Federal Circuit decision modifying a decision in the Court of Federal Claims); *see also In re Delannoy*, 852 F. App'x 279, 281 (9th Cir. 2021) (upholding issue preclusion based upon a state court decision).

required the DOE to promulgate implementing regulations regarding impact assistance payments under the interim storage provision, and in Count Six it alleges the DOE should only be allowed to use funds obtained as described in Part B to store nuclear material as opposed to using public funds. Dkt. 1, at 47–48.

An "essential" requirement of Article III standing is that "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). To demonstrate standing, a plaintiff must: (1) have suffered an injury in fact, or an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," that is (2) "fairly . . . traceable to the challenged action of the defendant," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

The DOE argues Butte County lacks standing because its Fifth and Six Claims are based upon a general disagreement with the regulatory scheme, not based upon actual injuries. Butte County does little to respond to this standing argument. It briefly and summarily contends that "Congress expressly conclude[d] that 'social and economic harm' is 'occasioned by the establishment and subsequent operation of any interim storage capacity within the jurisdictional boundaries . . .' of a 'unit of local government'" and as a result, it has suffered an injury and has standing to sue. Dkt. 9, at 25 (quoting 42 U.S.C. § 10156(e)).

To begin, this language is misleading, if not wholly false. The statute outlines there could be social and economic *impacts* from the storage of nuclear wastes on a community,

not social and economic *harms*. 42 U.S.C. § 10156(e)(1). There is a difference between harms and impacts. But even if the statute said what Butte County proffers, it would still not confer standing automatically. Butte County needs to provide more than a speculative and generic harm to be entitled to the benefit of standing. It must provide something "concrete and specific." *Citizens for Fair Rep. v. Padilla*, 815 F. App'x 120, 123 (9th Cir. 2020).

At oral argument, Butte County addressed this issue, but its explanation did little to assuage the Court. Butte County clearly stated it *was not* seeking any monetary damages (more on this point later) but only injunctive relief. That relief: for Defendants to comply with the regulations in the manner Butte County deems appropriate. Butte County readily admits it does not want the DOE to stop all nuclear activities at the INL. Many residents of Butte County work at the INL. A significant amount of revenue—personal and public—is generated by the nuclear storage activities at the INL. Said another way, Butte County brought this lawsuit to get the DOE to change the statutory manner or mechanism of *how* it stores nuclear waste at the INL; but it does not actually want that activity to cease. This is not enough. There is no injury to Butte County if the DOE utilized a scheme other than the one *Butte County* deems appropriate and Butte County is not asking for any actual *damages*.

In sum, the Court is persuaded that the prior litigation before the Federal Circuit has a preclusive effect on Claims One through Four. Nevertheless, because there are additional reasons that support dismissal, it will continue its analysis. The Court does find, however, that Butte County has not met its burden of establishing standing as to Claims Five and Six

because it has not articulated an actual or concrete injury it has suffered as a result of the DOE's choice to utilize a certain statutory scheme over the scheme Butte County thinks is better.

### B. Statute of Limitations

Even assuming Butte County's claims were not foreclosed by prior litigation, the time to bring this lawsuit has long since passed—at least for the bulk of the claims.

A six-year statute of limitations applies to actions brought pursuant to the APA. *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 954 (9th Cir. 2015), as amended on denial of reh'g (July 8, 2015) ("28 U.S.C. § 2401(a) creates a general six-year statute of limitations for actions brought against the United States.").

Here, Butte County's claims—which are based on events that occurred beginning in 1957 (for the placement of naval SNF at INL) or in the 1980s (for the placement of the TMI-2 reactor core material at INL)—accrued at the absolute latest in 1990 when DOE's authority to enter interim storage contracts under the NWPA lapsed. 42 U.S.C. § 10156(a)(1). As of January 1, 1990, the date upon which Part B expired, the DOE had not entered into any such contracts. Because it never entered into any such agreements, it never collected any fees from civilian contractors, and, in turn, it never made any impact assistance payments to local counties or municipalities. Butte County's claims thus fully accrued, at the latest, in 1990 when it would have understood it had not received impact assistance payments for any of the spent nuclear fuel stored at the INL.

Butte County's response to this argument is two-fold: (1) there is an exception to the statute of limitations, and (2) the DOE's violations are ongoing.

MEMORANDUM DECISION AND ORDER - 14

First, Butte County asserts that, pursuant to Ninth Circuit precedent, an exception to the six-year statute of limitations applies because it is contesting "the substance of an agency decision as exceeding constitutional or statutory authority" which allows it to bring the claim "later than six years following the decision to the particular challenger." *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991).

The Ninth Circuit has clarified, however, that this exception does not apply where the plaintiff was already aware of the agency's decision. *See Big Lagoon Rancheria v. California*, 789 F.3d 947, 954 n.6 (9th Cir. 2015), as amended on denial of reh'g (July 8, 2015) (en banc) ("[The Wind River] exception is inapplicable here because [the party] understood the 'true state of affairs' concerning the [agency's] decision . . . by, at the very latest, 1997 . . . ."); *see also, e.g., San Luis Unit Food Prods. v. United States*, 772 F. Supp. 2d 1210, 1228 (E.D. Cal. 2011), aff'd, 709 F.3d 798 (9th Cir. 2013) (rejecting the *Wind River* exception because "Plaintiffs allege that [the agency's] 'shift in policy' began as early as 1987 and should have been evident by the mid-1990s . . . . [Thus,] Plaintiffs were required to bring suit long before October 2009." (cleaned up)). The limited nature of the exception is logical when considering a key rationale of *Wind River* was to enable review of agency decisions that might otherwise escape judicial scrutiny because they did not initially affect anyone specifically. 946 F.2d at 715.

The Court finds Butte County's argument unpersuasive because it has not alleged it was unaware of the storage of nuclear material at INL leading up to 1990. Thus, there is no reason to suggest it could not have brought these claims by the applicable deadline in 1996.

Second, Butte County argues the DOE's violations are ongoing and that it is still (to this day) acting outside of its authority. In support of this argument, it asserts the now-expired NWPA was, and is, the only authority the DOE can rely on to support the storage of nuclear fuel at the INL. It avers the DOE's continued insistence that it is acting under other statutes to store SNF at the INL is unlawful and that the statute of limitations remains open.

Like its above-findings—and as will be explained in greater detail below—the Court finds this argument unpersuasive because there is no reason to suggest the DOE is acting outside of its authority or that its decision to enter contracts under the AEA, as opposed to the NWPA, was unlawful. Furthermore, this is not an ongoing-tort situation.

As a threshold matter, Butte County's alleged claims from the 1980's do not "re-accrue" simply because the DOE continues implementation of its prior decision. "[A] claim subject to the § 2401(a) limitations period first accrues when the plaintiff comes into possession of the critical facts that he has been hurt and who has inflicted the injury." *Mishewal Wappo Tribe v. Jewell*, 84 F. Supp. 3d 930, 937 (N.D. Cal. 2015), *aff'd sub nom. Mishewal Wappo Tribe v. Zinke*, 688 F. App'x 480 (9th Cir. 2017) (cleaned up). Said another way, any argument that Butte County should be allowed to bring claims now based upon a violation that purportedly occurred some 40 years ago simply because the material is *still at* the INL is futile because it knew the storage was happening 40 years ago.[7]

---

[7] As an aside, it is not clear to the Court—and neither party provided any information or argument on this point—whether 42 U.S.C. § 10156 was intended to continue beyond the open contract period. While contracts could only be signed between 1983 and 1990, were impact payments intended to continue

As outlined—and consistent with the Court of Federal Claims conclusion—the time at which Butte County came into possession of facts that would support its claims was, at the latest, in 1990, when it would have understood it was not receiving impact assistance payments under the NWPA (and/or that no contracts had even been entered into pursuant to the NWPA). Accordingly, Butte County's time to challenge these actions ran in 1996.

In sum, the fact that the DOE continues to make *no* impact assistance payments, and continues to store materials at INL, including utilizing the NRC licensure process, does not change the accrual date or give Butte County a second bite at the apple. "[A]n agency's ongoing implementation of a prior decision is not itself a discrete final agency action reviewable under the APA." *WildEarth Guardians v. DOJ*, 181 F. Supp. 3d 651, 669 (D. Ariz. 2015) (cleaned up); *see also Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800-02 (9th Cir. 2013) (an agency's "day-to-day operations that merely implement operational plans" were not themselves reviewable under the APA).

In short, the exception to the six-year statute of limitations does not apply.

Now, at oral argument Butte County explained the DOE was, to a certain degree, living in the past because its claims in this case are not simply about the DOE's failure to comply with its statutory obligations in the late 1980's, but its ongoing failure to comply. For example, it asserts the United States Navy estimates it sent some 1.8 metric tons of

---

indefinitely? For example, had a contract been entered into in 1985 and SNF was being stored at the INL, would the DOE be required to make impact payments to Butte County until the end of time for that storage? Presumably yes. The Court brings this up because it helps Butte County's argument that there is a failure occurring *today* for something that happened *in the past*. Once again, however, the problem is there are no active contracts under the NWPA. And any challenge to the DOE's failure to enter into contracts pursuant to the NWPA—and receive impact assistance payments—accrued in 1996.

SNF to the INL in 2023. Butte County believes the DOE should be complying with the provisions of 42 U.S.C. § 10156 *now* and determining the social and economic impacts of its actions and its failure to do so is an ongoing problem not subject to the aforementioned statute-of-limitations concerns. The Court has multiple problems with this argument.

To begin—and as will be explained in the following section—the provisions of 42 U.S.C. § 10156 do not apply in this case because the DOE never utilized the NWPA. It did not enter into any such contracts in the 1980s and it is not entering into such contracts now.[8] The NWPA did not apply then; the NWPA does not apply now. Thus, reliance on these statutes is misplaced. What's more, even if the NWPA applied, neither sub-section cited by Butte County—42 U.S.C. §§ 10156(b) & (e)—mandates any type of annualized review as it suggests. Those subsections refer to impact assistance payments. Yes, parameters for calculating impact assistance payments are listed, but none of the regulations outline any process for determining whether there has been any "social or economic impacts occasioned by the establishment and subsequent operation of any interim storage capacity with the jurisdictional boundaries of such government . . . ." 42 U.S.C. § 10156(e)(1). In other words, Butte County cannot complain that the DOE is not complying with the statute when no requirements are listed in the statute. Also on the topic of impact assistance payments: Butte County is now claiming it does not want those payments; it simply wants the DOE to comply with the requirements of the statutes. But any requirements of the

---

[8] In fact, it cannot. The window for entering into these contracts closed January 1, 1990. This is one of the reasons Butte County's arguments are so confusing. If there are no active contracts under the NWPA, why would its provisions apply now?

statute—that again, are not enumerated—are only for the purpose of *making impact payments*. So why should the DOE undertake a task meant to bring about a certain result if Butte County does not want that result? Butte County's arguments are somewhat circular and do not lead to the result it desires.

In summary, even were the Court to set aside all the arguments related to actions taken, or not taken, in the 1980s and 1990s, Butte County is not facing an on-going statutory violation today. Thus, there is no reason to address standing for any alleged improper action currently occurring.

## C. Failure to State a Claim

Even assuming the prior litigation did not bar Butte County's claims, and also assuming the statute of limitations had not run on any potential prior claims or current claims, the Court agrees with the DOE that Butte County has failed to state any valid claims for relief. As already mentioned extensively, the simple fact boils down to this: the DOE *never* relied on Part B of the NWPA to establish an interim storage program. It *never* fulfilled any of those contracts. It *never* made any impact assistance payments. Thus, Butte County's whole case is based upon a flawed premise. The DOE cannot be liable under the NWPA because it never took any action pursuant to the NWPA.

This, then, is why Butte County takes the position that the DOE is wrong in its execution of how it stores SNF—and has apparently been wrong since the 1980's. Its primary argument is that, although the DOE claims to have acquired and stored nuclear material under the AEA, it was incorrect to do so because its only authority to provide storage of TMI-2 and NSF is derived from the NWPA, not the AEA. Continuing the

argument, it claims the NWPA should be used as the basis for any SNF transported to, and stored at, the INL today. In other words, Butte County is challenging how the DOE framed its actions some 40 years ago and how it continues to frame its actions today.

To begin, the contracts the DOE entered for TMI-2 Storage and NSF both state they are entered into under the AEA. Dkt. 7-2, at 1 (TMI-2 contract stating "this Agreement is executed under the authority of the Atomic Energy Act of 1954, as amended, and the DOE Organization Act")[9]; Dkt. 7-5 (outlining that the AEA provides for the delivery of SNF); 42 U.S.C. § 2121(a)(3) (codifying AEA § 91(a)(3) as amended which authorized the DOE to "provide for safe storage, processing, transportation, and disposal of hazardous waste (including radioactive waste) resulting from . . . naval nuclear propulsion programs").

Again, Butte County seems to argue the DOE was incorrect in its assessment of its statutory authority roughly 40 years ago. But even were the Court to indulge Butte County's argument, after examining the specific features of the DOE's acquisition of the TMI-2 reactor core material (including the applicable contract), it is easy to see that the DOE never used its authority under the NWPA.

The purpose of the interim storage program under the NWPA was "to prevent

---

[9] Butte County points to Congressional testimony by a former Assistant Secretary of the DOE where he stated that the acquisition of the TMI-2 material came about under "terms consistent with the [NWPA]" claiming this means the agreement was really pursuant to the NWPA. Dkt. 9, at 14. Where, as here, the text of a contract is unambiguous, there is no need to refer to outside statements. *See, e.g.*, *Nat. Res. Def. Council v. Norton*, 2016 WL 6135858, at *21 (E.D. Cal. Oct. 20, 2016) (noting that when interpreting contracts of the United States, under federal common law "[t]he plain language within the four corners of the contract must first be examined"). But even if the Court were to consider these congressional statements, there is nothing inconsistent. It appears the Assistant Secretary was comparing the AEA and the NWPA—stating the DOE was taking responsibility of the materials "under terms consistent with [the NWPA]"—not saying the contract at issue was actually entered into pursuant to the NWPA.

disruptions in the orderly operation of any civilian nuclear power reactor that cannot reasonably provide adequate spent nuclear fuel storage capacity at the site of such reactor when needed." 42 U.S.C. § 10151(b)(2); *see also id.* § 10151(a)(3). Yet this was *not* the reason for the placement of the TMI-2 reactor core material at INL. The Three Mile Island reactor was not going to continue operating, regardless of the location of the TMI-2 reactor core material. These materials were stored at the INL for research and development, not because Three Mile Island did not have storage capacity.[10]

In like manner, the DOE's contract with the United States Navy to store SNF does not implicate the NWPA because the Navy is not a *civilian* power plant operator. The naval SNF managed at INL is from the naval nuclear propulsion plants under the responsibility of the NNPP, a joint program of the DOE and Department of the Navy; it is not civilian reactor SNF. *See, e.g.*, 42 U.S.C. § 10151(a)(1)-(3) (referring to "spent nuclear fuel for civilian nuclear power reactors"); 42 U.S.C. § 10156(a) (discussing contracts between the DOE and "persons who generate or own spent nuclear fuel resulting from *civilian nuclear activities* for the storage of such spent nuclear fuel" (emphasis added)). Furthermore, naval SNF was placed at INL beginning in 1957, and the NWPA was not even signed into law until 1983. This helps illustrate that the regime under which the DOE was operating to store naval SNF *was not* the NWPA.

And finally, any continued placement of SNF at the INL cannot give rise to a claim

---

[10] To be sure, Three Mile Island may not have had available capacity. The reactor had been partially destroyed. *Could* the DOE have secured these materials under the NWPA? Maybe. But was their decision to do so under the AEA erroneous? The Court finds the answer is no.

under the NWPA because its provisions explicitly state that January 1, 1990, is the ending date for the DOE's authorization to enter into such contracts. Thus, any fuel that may be coming to the INL at this time is not subject to the provisions of the NWPA.

The simple fact of the matter is the DOE never exercised its authority under the NWPA—at the INL *or anywhere else*. It never established an interim storage facility. Whether it should have is irrelevant. There cannot be any failure to perform under the terms of a program when that program was never utilized. Butte County has failed to state a claim for relief and dismissal is appropriate.

## V. CONCLUSION

The Court finds Butte County lacks standing to bring Claims Five and Six. The Court is also inclined to find issue preclusion bars Claims One through Four. Even considering the Court's very minor reservations about issue preclusion, the Court must still dismiss because the statute of limitations has run on any prior claims. Furthermore, assuming the statute of limitations was still open on any claims from the 1980s—or, if the Court were to consider any current alleged violations—Butte County has failed to state a claim for relief under the NWPA because the DOE did not then (and does not now) utilize the provisions of the NWPA for the storage of nuclear waste at the INL. Thus, there are three independent reasons dismissal is warranted in this case.

Candidly, the Court is not convinced Butte County's complaint could be saved by amendment at this point. It is inclined to dismiss with prejudice and without leave to amend. The barriers here are legal in nature and no additional (or different) factual allegations could change the outcome. That said, the Court also appreciates the DOE's

candor at oral argument that until it (and the Court) sees what other theories Butte County

may have, it is difficult to say amendment is completely futile.

Nevertheless, to streamline matters, the Court will not allow amendment outright.

If Butte County wishes to amend its complaint, it may file a Motion for Leave to Amend

Complaint within 30 days of the date of this order. A proposed amended complaint should

be included, and Butte County should identify in its Motion precisely how the proposed

amended complaint overcomes the legal barriers addressed in this decision. Once filed, the

DOE may respond to the Motion, if it so desires, within 21 days. Butte County may then

reply within 14 days. The Court will then determine which claims, if any, have been

sufficiently pleaded and can proceed and which have not and will be dismissed with

prejudice.[11]

## VI. ORDER

**IT IS HEREBY ORDERED THAT**:

1.  The DOE's Motion to Dismiss (Dkt. 7) is GRANTED.

2.  This case is DISMISSED WITHOUT PREJUDICE and CLOSED.

DATED: February 1, 2024

David C. Nye
Chief U.S. District Court Judge

---

[11] Alternatively, of course, Butte County can conclude this litigation without further action or appeal the instant decision. Because it may desire to appeal, the Court will issue a judgment now. As indicated—both here and in the judgment—the dismissal is without prejudice; thus, if Butte County files a Motion for Leave to Amend and the Court grants the Motion, it will simply vacate the judgment and reopen the case.